**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **RITA M. CHILDS**,<br><br>Plaintiff,<br><br>v.<br><br>**CAROLYN W. COLVIN**,<br>Acting Commissioner of Social Security,<br><br>Defendant. | Case No. 3:15-cv-00075-SI<br><br>**OPINION AND ORDER** |

Merrill Schneider, SCHNEIDER KERR LAW OFFICES, P.O. Box 14490, Portland, OR 97293. Attorney for Plaintiff.

Billy J. Williams, Acting United States Attorney, and Janice E. Hebert, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97201-2902; Kathryn A. Miller, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Rita Malia Childs ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Disability Insurance Benefits. For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for Disability Insurance Benefits ("DIB") on March 14, 2011, alleging disability beginning on August 25, 2008. AR 16, 163-66. She was 53 years old at the alleged disability onset date. Plaintiff alleges disability due to degenerative disc

disease. AR 18, 64. The Commissioner denied her application initially and upon reconsideration; thereafter, she requested a hearing before an Administrative Law Judge ("ALJ"). AR 65-79, 81-95, 114-15. An administrative hearing was held on April 17, 2013. AR 32-63. On May 1, 2013, the ALJ found Plaintiff not disabled as of August 25, 2008. AR 13-26. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-6. Plaintiff now seeks judicial review of that decision.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous

period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966

(describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### C. The ALJ's Decision

The ALJ began his opinion by noting that Plaintiff met the insured status requirements of the Social Security Act through December 21, 2014. AR 18. The ALJ then applied the sequential process. AR 18-26. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of August 25, 2008. AR 18. At step two, the ALJ concluded that Plaintiff had the severe impairment of degenerative disc disease status post laminectomy at L4-5. AR 18-20. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. AR 20.

The ALJ next assessed Plaintiff's RFC and found that she could perform less than the full range of light work with the following restrictions: she can occasionally stoop, kneel, crouch, crawl, reach overhead bilaterally, climb ramps or stairs; she can never climb ladders, ropes, or scaffolds. AR 20. At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a grocery store cashier and sales clerk. AR 25. Therefore, the ALJ concluded that Plaintiff was not disabled from August 25, 2008, through the date of the ALJ decision, May 1, 2013. AR 26.

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and is not based on the application of proper legal standards. Plaintiff alleges the ALJ erred by

erroneously failing to account for or explain the disposition of material limitations found by Plaintiff's surgeon, Jordi Kellogg, M.D. Plaintiff contends that this failure was not harmless because Plaintiff's past relevant work requires reaching as generally performed. The Court addresses these arguments below.

**A. Evaluating Conflicting Physicians' Opinions**

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another

physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

**B. Plaintiff's Course of Treatment with Dr. Kellogg**

Dr. Kellogg began care of Plaintiff in June 2009, on referral from Plaintiff's chiropractor, Dokken Ramey, D.C. AR 349-50, 362. Dr. Kellogg found disc herniation and radiculopathy[1] and performed a L4-5 microdiscectomy surgery on July 30, 2009. AR 353-54. On August 13, 2009, after finding recurrent disc herniation with radiculopathy, Dr. Kellogg performed another L4-5 microdiscectomy. AR 347-48, 351-52. Following the surgeries, Dr. Kellogg advised Plaintiff to refrain from work during the month of September and engage in physical therapy. AR 345. In October 2009, Dr. Kellogg wrote to Plaintiff's chiropractor that Plaintiff had no radiculopathy and was happy with the results. AR 343. He stated that Plaintiff was considering returning to

[1] "Radiculopathy" is "[a]ny disease of a nerve root." *Taber's Cyclopedic Medical Dictionary* 1963 (Donald Venes et al. eds. 2009).

work but expressed concerns about the physical demands of her work with frequent twisting and turning and lifting up to 40 pounds. *Id.*

Dr. Kellogg attached to his letter a "Release to Return to Work" form in which he opined that Plaintiff could lift and carry 25 pounds occasionally and ten pounds frequently. AR 344. Dr. Kellogg found that Plaintiff could stand and walk for two hours at a time up to eight hours in a workday. *Id.* Dr. Kellogg found that Plaintiff could intermittently stoop, bend, crouch, crawl, kneel, twist, and climb. *Id.* Dr. Kellogg also stated that Plaintiff could occasionally balance, reach, push, and pull. *Id.*

**C. The ALJ's Stated Reasons for Not Crediting All Limitations Found by Dr. Kellogg**

Plaintiff argues that the ALJ erred in evaluating Dr. Kellogg's opinion by failing properly to dispose of the sitting, standing, walking, reaching, and pushing and pulling limitations found by Dr. Kellogg. AR 23, 344. Specifically, Plaintiff points to three areas of contention. First, the RFC limited Plaintiff to light work without any further sitting, standing, or walking restrictions, meaning that Plaintiff can sit, stand, or walk up to six hours with normal breaks, as opposed to Dr. Kellogg's recommendation that Plaintiff perform each activity for two hours at a time up to eight hours. AR 20, 23. Second, the RFC limited Plaintiff to occasional *overhead* reaching, while Dr. Kellogg limited Plaintiff to occasional reaching of any kind. AR 20, 23. Finally, the RFC contained no pushing or pulling limitations, as opposed to Dr. Kellogg's recommendation that Plaintiff push and pull only occasionally. AR 20, 23. Plaintiff maintains these differences are material and that the ALJ's failure to account for and give sufficient reasons to reject them was in error.

The ALJ gave "significant weight" to Dr. Kellogg's opinion but formulated Plaintiff's RFC based upon the opinions of several physicians, the objective medical evidence, and Plaintiff's activities of daily living. AR 23-25. The ALJ gave "great weight" to the opinions of

State agency nonexamining consultative physicians Martin Kehrli, M.D., and Martin Lahr, M.D., M.P.H. AR 24. The ALJ also gave "some weight" to the opinion of Ryan Vacura, M.D., who examined the Plaintiff in September 2011. AR 23-24.

The ALJ included only some of Dr. Kellogg's proposed limitations in Plaintiff's RFC for four reasons: (1) the opinion was considered in conjunction with the opinions of other physicians; (2) the timing and extent of Dr. Kellogg's treatment of Plaintiff; (3) Plaintiff's activities of daily living; and (4) conflict with the medical record.

**1. Conflicting Opinions of Other Physicians**

As a threshold matter, Dr. Kellogg's opinion is contradicted by the opinions of Dr. Kehrli, Dr. Lahr, and Dr. Vacura. AR 24, 75-79, 90-94, 452. Dr. Kehrli and Dr. Lahr reviewed the medical record and opined, in September and December of 2011, that Plaintiff could stand, sit, and walk for six hours in an eight-hour workday with normal breaks;[2] had limited overhead reaching; and had no limitations on pushing and pulling. AR 75-76, 90-92. Dr. Lahr also expressly disagreed with Dr. Kellogg's opinion and stated that Dr. Kellogg "relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." AR 93. The ALJ also considered the opinion of examining physician Dr. Vacura, who examined Plaintiff in September 2011, and observed that Plaintiff could sit for up to six hours with breaks and could frequently reach. AR 24, 452. Therefore, Dr. Kellogg's opinion is contradicted by the opinions of Dr. Kehrli,

---

[2] It is doubtful that there is any difference between Dr. Kellogg's recommendation that Plaintiff can only stand, sit, and walk for two hours at a time in an eight-hour workday and the ALJ's RFC determination that Plaintiff can stand, sit, and walk for six hours with normal breaks. The assessment that Plaintiff must sit or stand to rest and relieve pain can be reasonably accommodated by the normal breaks of a working day. *Braithwaite v. Comm'r of Soc. Sec.*, 2011 WL 1253395 at *4; *5 n.4 (E.D. Cal. Mar. 31, 2011) ("[N]ormal breaks occur every two hours during a normal 8-hour work day: one in the morning, lunch, and one in the afternoon"). The Court is inclined to agree with the court in *Braithwaite*.

Dr. Lahr, and Dr. Vacura, and Dr. Kellogg's opinion may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle*, 533 F.3d at 1164.

In evaluating Plaintiff's limitations, the ALJ gave "great weight" to the opinion of Dr. Lahr and considered his medical diagnosis in Plaintiff's RFC determination. AR 24-25, 90-94. Dr. Lahr's recommendations regarding Plaintiff's sitting, standing, walking, reaching, and pushing and pulling limitations, discussed above, are identical to the ALJ's determination of Plaintiff's RFC. AR 24-25, 90-94. Dr. Lahr's opinion is consistent with the medical evidence in the record.

Dr. Lahr opined that Plaintiff was limited to occasional overhead reaching and had no pushing and pulling limitations. AR 90-91. This opinion is consistent with the medical evidence that Plaintiff's lumbar imaging studies were negative following the September 2011 car accident, Plaintiff's minimal treatment for alleged symptoms since her lumbar surgery in August 2011, and the lack of any substantiation for these limitations beyond Plaintiff's discredited subjective complaints.[3] AR 25, 439, 462, 467. This opinion is also consistent with the Plaintiff's activities of daily living, discussed below. AR 232-239, 449, 453-458. Additionally, Dr. Lahr's opinion is more restrained than the opinion of Dr. Vacura, who opined that Plaintiff could frequently reach. AR 452.

**2. Timing of Dr. Kellogg's Treatment**

In considering Dr. Kellogg's opinion, the ALJ found that the medical evidence at that time supported Dr. Kellogg's assessment of Plaintiff's functional capacity. AR 23. The ALJ emphasized, however, that Dr. Kellogg only treated Plaintiff for a period of four months, beginning in June 2009 and continuing until October 2009. *Id*. Since Plaintiff's last visit with

[3] As discussed below, the ALJ found Plaintiff not fully credible as to her subjective symptom testimony, AR 25, and Plaintiff does not dispute that finding.

Dr. Kellogg in October 2009, the ALJ noted, Plaintiff's activities of daily living suggest that she has had some improvement in the severity of her symptoms. *Id*.

**3. Plaintiff's Activities of Daily Living**

The ALJ found that Plaintiff's daily living activities reflected negatively on the severity of her alleged limitations. AR 22. The ALJ noted that since October 2009, the date Plaintiff was last seen by Dr. Kellogg, Plaintiff's activities of daily living suggest that she had some improvement in her postural mobility. *Id*. For example, Plaintiff has reported that she is able to sweep and engage in gardening activities such as watering plants, planting seedlings, and picking vegetables. AR 23, 235, 449. The ALJ found that the performance of these activities suggest that Plaintiff has the ability to stoop, crouch, kneel, and twist at least occasionally. AR 23. Plaintiff contends, however, that her postural mobility (*i.e*., her ability to stoop, crouch, kneel, and twist) is not at issue. Instead, Plaintiff focuses on the ALJ's alleged failure to take into account Dr. Kellogg's sitting, standing, walking, reaching, and pushing and pulling limitations.

In formulating Plaintiff's RFC, however, the ALJ evaluated additional evidence of Plaintiff's daily living activities. The ALJ considered a function report dated July 18, 2011, and a psychological evaluation from September 2011. AR 22, 232-239, 453-458. There Plaintiff reported that she prepares simple meals, gardens, goes shopping, and performs household chores such as dishes, laundry, and sweeping. AR 232-235, 455. Plaintiff also reported occasionally taking care of her granddaughter. AR 233. The ALJ found that Plaintiff's activities of daily living suggest that her symptoms and limitations are not as severe as Plaintiff has alleged. AR 22-23, 25; *see Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work).

**4. Conflict with Medical Evidence**

The ALJ found that Dr. Kellogg's October 2009 opinion was consistent with the objective medical evidence *at that time*. AR 23. The ALJ expressly noted that Dr. Kellogg did not treat Plaintiff after October 2009. *Id*. In formulating Plaintiff's RFC, the ALJ considered medical evidence from 2011 that contradicts some of Dr. Kellogg's earlier opinions regarding Plaintiff's limitations. AR 23-25.

The medical record indicates that Plaintiff had a large focal disc protrusion at L4-5 impinging on the right L5 nerve root. AR 303, 305, 336. Following her second microdiscectomy surgery, however, Plaintiff reported a reduction in pain, AR 343, 345-346, and there is no record of medical treatment following surgery. Plaintiff was in another auto accident in September 2011 and reported back pain, but all lumbar imaging studies were negative. AR 439. The ALJ noted that Plaintiff has received very limited medical treatment since her lumbar surgery in 2009. AR 22. For example, in October 2011, Plaintiff reported that she had not had a primary care provider for about three years. AR 462. The treatment records from October 2011 indicate that Plaintiff only takes over-the-counter Aleve or ibuprofen occasionally to treat pain symptoms and that the medication was helpful. AR 467. Moreover, the ALJ found the Plaintiff to be not entirely credible as to her symptoms, AR 25, and Plaintiff does not challenge that assessment.

The ALJ found Plaintiff's conservative treatment of her neck and back pain suggests that her impairment is not as severe as she has alleged. AR 25. Furthermore, the ALJ noted that no treatment provider or consultative evaluator opined that Plaintiff's impairments are so severe as to prevent her from working. AR 24-25, 344, 452. The ALJ found that, while Plaintiff testified that she had significant difficulty walking prior to her lumbar surgery in 2009, there is insufficient objective medical evidence that Plaintiff had significant difficulty walking after the surgery. AR 24. The ALJ rejected the opinion of Dr. Vancura, that Plaintiff was limited to

standing and walking for only four hours total, due to a lack of evidence supporting this limitation. AR 24. The ALJ noted that the record established that Plaintiff only experienced occasional heel and calf pain after standing at the end of the day. AR 24, 448.

**D. The ALJ's Hypothetical to the VE**

The ALJ's hypothetical to the Vocational Expert (VE) properly included all credible limitations, including the bilateral overhead reaching limitation, and was consistent with Plaintiff's RFC. AR 58-59. The VE testified that an individual with Plaintiff's limitations could perform Grocery Store Cashier (DOT 211.462-014) and Sales Clerk (DOT 290.477-014) positions, as generally performed. AR 59. Plaintiff first claims that the ALJ's failure to include Dr. Kellogg's reaching limitation was harmful because Plaintiff's past relevant work as a grocery store cashier and sales clerk, as defined by the Department of Labor's Dictionary of Occupational Titles ("DOT"), require reaching as generally performed. Plaintiff further contends that even under the occasional bilateral overhead reaching limitation in the RFC, performance of the light jobs of Grocery Store Cashier and Sales Clerk is foreclosed and therefore the ALJ erred in finding that Plaintiff could perform work even under the RFC as it stands.

An ALJ must comply with SSR 00-4p, *available at* 2000 WL 1898704, which provides that step five findings must either be consistent with the DOT or supported by persuasive evidence to justify a deviation from it. At step five, the ALJ has discretion over whether to call a VE. *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); 20 C.F.R. 416.966(e). When a VE provides information about the requirements of an occupation, the ALJ has an affirmative duty to determine whether the information conflicts with the DOT and to obtain an explanation for the apparent conflict. *Massachi v. Astrue*, 486 F.3d 1149, 1151-53 (9th Cir. 2007). The ALJ may rely on testimony from the VE that contradicts the DOT, but only if the record contains

persuasive evidence to support the deviation. *Johnson v. Shalala*, 60 F.3d 1428, 1436 (9th Cir. 1995).

The Court finds that the occasional bilateral overhead reaching requirement in the RFC was proper, and assigns no error to the ALJ's use of this requirement in the hypothetical to the VE. The VE testified in response to the ALJ's hypothetical that an individual with an occasional bilateral overhead reaching limitation could perform grocery store cashier and sales clerk positions, as generally performed. AR. 58-59. The VE also testified that his testimony was consistent with the DOT. AR 62; *see also Bayliss v.Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE."). Plaintiff did not object to the VE testimony at the hearing, nor does she assign any error to this testimony or claim any inconsistency between the VE's testimony and the ALJ's hypothetical in her briefs. Accordingly, any claim of an unresolved inconsistency between the VE's testimony and the ALJ's hypothetical is waived.[4] *See Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) ("[A]t least when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal"); *Marathon Oil Co. v. United States*, 807 F.2d 759, 767 (9th Cir. 1986) (stating that, "[a]s a general rule, we will not consider issues not presented before an administrative proceeding at the appropriate time."); *see also Mills v. Apfel*, 244 F.3d 1, 8 (1st

[4] Even if Plaintiff had not waived this argument, the ALJ could have reasonably concluded that Plaintiff's past relevant work does not require frequent bilateral overhead reaching because, while the jobs of cashier and sales clerk require at least frequent reaching, the DOT does not include any clear requirement of overhead reaching. U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* 333, 366 (1993). Therefore, the ALJ's RFC determination and hypothetical to the VE would not be in conflict with the DOT.

Cir. 2001) (finding waiver due to failure to raise issue at hearing before ALJ, as opposed to the Appeals Council).

Plaintiff also asserts that the ALJ made no transferable skills finding and therefore, the ALJ's failure to include Dr. Kellogg's limitations in the hypothetical constituted harmful error. While the ALJ did not explicitly include a transferable skills finding in the written administrative decision, the ALJ did ask the VE about transferable skills in various hypotheticals. AR 59-61. In response, the VE testified about transferable skills, such as:

> There are some sedentary jobs that can be considered for – using sales skills …. There are telephone solicitor jobs, telemarketing jobs that are at the sedentary semi-skilled, SVP 3 level, which could be considered for transferability. DOT number 299.357-014 and there are greater than 10,000 state-wide; greater than a million nationally.

AR 61.

Because the Court finds that the occasional bilateral overhead reaching requirement in the RFC was proper and that Plaintiff has waived any claim of unresolved inconsistency between the VE's testimony and the ALJ's hypothetical, the Court finds no error in the ALJ's use of this requirement in the hypothetical presented to the VE.

**E.     Summary**

The ALJ sufficiently considered Dr. Kellogg's opinion. At step two, the ALJ found Plaintiff's degenerative disc disease post laminectomy was a severe impairment. AR 18. The ALJ also discussed Plaintiff's condition at length, citing to Dr. Kellogg's opinion in the record and finding his assessment of Plaintiff's impairments limited by later developments. AR 23. Specifically, the ALJ noted that Dr. Kellogg only treated Plaintiff for a period of four months and has not treated Plaintiff since October 2011. Since that time, substantial evidence in the record shows improvement of her alleged impairments. *Id.* Specifically, Plaintiff's activities of

daily living suggest that her symptoms and limitations are not as severe as Plaintiff has alleged. The ALJ also found that Plaintiff's conservative course of treatment reflected negatively on her claims of impairment. AR 24-25. Accordingly, the ALJ gave specific and legitimate reasons supported by substantial evidence in the record to reject portions of Dr. Kellogg's opinion. Because the ALJ considered and addressed Dr. Kellogg's treatment notes in his written decision, including Dr. Kellogg's proposed limitations, and included uncontradicted, time-appropriate accommodations in the RFC, *see* AR 20, 23, the Court finds no error in the ALJ's assessment of Dr. Kellogg's opinion. Because the ALJ's RFC determination was proper and consistent with the DOT, the Court finds that any potential error was harmless.

## CONCLUSION

The Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 11th day of April, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge